UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

The Estate of THOMAS M. O'HARA,
Deceased, by DONALD A. O'HARA,
Personal Representative,
              Plaintiff,                        Case No. 05-71075
                                                  Judge Avern Cohn
v.

NORFOLK SOUTHERN RAILWAY CO.,
MONROE COUNTY ROAD COMMISSION and
VILLAGE OF SOUTH ROCKWOOD,
              Defendants.
_____/

### MEMORANDUM AND ORDER DENYING VILLAGE OF SOUTH ROCKWOOD'S MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

      This is a personal injury case.  Plaintiff, the Estate of Thomas Michael O'Hara, though Personal Representative Donald A. O'Hara (the Estate), is suing the defendants for damages related to the death of Thomas O'Hara (O'Hara), who died after the truck he was driving was hit by a train in Monroe County, Michigan.  The defendants are:

- Norfolk Southern Railway Company (Norfolk Southern);
- Monroe County Road Commission (Road Commission); and
- Village of South Rockwood (South Rockwood).

The Estate asserts that O'Hara's death was proximately caused by:

- Norfolk Southern's negligent failure to signal the approach of its train by light and/or horn;
- The Road Commission's defective or improper installation and/or maintenance

of overhead traffic signals, or defective traffic light sequencing at the intersection close to the railroad crossing (the crossing); and

• South Rockwood's negligent maintenance of South Huron River Drive (the road) leading up to and across the crossing; in particular, defective elevation of the road, and line of sight deficiencies related to the defective elevation.[1]

Before the Court is South Rockwood's motion for summary judgment. South Rockwood asserts that it has governmental immunity. South Rockwood says that the alleged defective elevation of the road and alleged line of sight deficiency caused by the elevation do not fall within the highway exception to governmental immunity with regard to highway defect claims. Alternatively, South Rockwood says that summary judgment should be granted because the condition of the road was "open and obvious."

For the reasons that follow, South Rockwood's motion will be denied.

---

[1] The Estate also claimed in its first amended complaint that South Rockwood was liable for defective or improperly installed or maintained overhead traffic signals, or defective traffic light sequencing. The Estate says that discovery has indicated that the Road Commission is responsible for the installation, maintenance, repair of the traffic signals, and it will not be asserting any claims related to the traffic signals against South Rockwood. The Estate also claimed in its first amended complaint that South Rockwood had issued a whistle ban at the time of the accident. The Estate says that discovery has shown that no such ban existed, and it will no longer be pursuing this claim against South Rockwood. Accordingly, the Court need not address South Rockwood's motion for summary judgment as to these claims.

## II. BACKGROUND

### A. Factual Background

**1.**

On October 20, 2003, at approximately 10:37 p.m., O'Hara (then 18 years old) was traveling home from his girlfriend's home in a new 2003 Dodge Dakota truck. According to Dayna Delozier (Delozier), who was driving behind O'Hara for approximately two to three miles before the accident, O'Hara drove north along North Dixie Highway and turned left at the traffic signal governing the intersection at North Dixie Highway and South Huron River Drive. He then proceeded west on South Huron River Drive towards the crossing approximately 66 feet from the intersection. Delozier says that the traffic light was green when O'Hara turned onto South Huron River Drive. She says that the traffic light turned yellow as she approached the intersection, and that she turned into a Sunoco gas station. As O'Hara proceeded over the tracks, his truck was hit by Norfolk Southern train number 6732, which was heading south. Delozier did not witness the accident. However, she heard the impact and immediately called 911. O'Hara suffered fatal internal injuries and was pronounced dead at the scene. A sketch of the area is attached as Exhibit A.

**2.**

The defendants say that the crossing was equipped with back-to-back side of road flashing light signals, crossbucks, advance warning signs, and pavement stop bars. Additionally, the traffic signal light at the intersection was interconnected to the flashing light signals at the crossing. The record does not show whether these devices

were functioning properly at the time of the accident. Likewise, the record does not show whether the Norfolk Southern train properly signaled its approach through light and horn signals. However, these issues are not presently before the Court. At issue is whether the Estate has established that there exists a genuine dispute as to whether the elevation of road leading up to the crossing was defective; whether the defect caused line of sight deficiencies; and whether the road approaching the crossing from the direction of North Dixie Highway was properly maintained.

### B. Procedural Background

The Estate filed the case on March 18, 2005 against Norfolk Southern alleging improperly installed or maintained overhead traffic signals or defective traffic light sequencing at the intersection adjacent to the crossing, defective crossing signals, defective elevation in the road, and line of sight deficiencies.

On July 6, 2005, Norfolk Southern filed a notice of non-involved parties. Norfolk Southern said that should the jury find that the aforementioned conditions proximately caused O'Hara's death, the Road Commission, South Rockwood, and MDOT should be held liable because (1) the Road Commission installed and maintained the traffic signals in place at the intersection, (2) South Rockwood has jurisdiction over South Huron River Drive, and (3) MDOT was responsible for evaluating the conditions and protections necessary at the crossing.

The Estate filed a first amended complaint adding MDOT, the Road Commission, and South Rockwood as defendants. On February 21, 2006, the Court granted MDOT's

motion to dismiss on grounds that it is entitled to Eleventh Amendment immunity.[2]

### III.  SUMMARY JUDGMENT

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e).  Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion.  See Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); Anderson, 477 U.S. at 249-50.  Additionally, and significantly, "affidavits containing mere conclusions have no probative value" in summary judgment proceedings.  Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir. 1968).

---

[2] It appears that the Estate is pursuing a claim in the Michigan Court of Claims against MDOT.

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson, 477 U.S. at 251-52).  The Court "must view the evidence in the light most favorable to the non-moving party." Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995).  Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact.  See Anderson, 477 U.S. at 255.  Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted.  Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001).

## IV. ANALYSIS

### A.  Whether South Rockwood is Entitled to Governmental Immunity

### 1. Framework for Governmental Immunity

The governmental immunity act, M.C.L. § 691.1401 et. seq., provides that a governmental agency is immune from tort liability while engaging in a governmental function unless a specific exception applies.

### 2.  The Highway Exception to Governmental Immunity

The highway exception to governmental immunity, M.C.L. § 691.1402(1) requires a governmental agency with jurisdiction over a highway[3] to "maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. In particular, M.C.L. § 691.1402(1) defines the scope of this duty as follows:

> The duty of the state and the county road commissions to repair and

---

[3] The road is a highway for purposes of the statute.

maintain highways, and the liability for that duty, extends only to the improved portion of the highway designed for vehicular travel and does not include sidewalks, trailways, crosswalks, or any other installation outside of the improved portion of the highway designed for vehicular travel.

In <u>Hanson v. Mecosta County Rd. Cmm'rs</u>, 465 Mich 494 (2002), the Michigan Supreme Court held that the duty to repair and maintain a highway does not extend to a claim of "defective design." Practically speaking, the highway exception does not include a duty to design or to correct defects arising from the original design or construction of highways. <u>Id</u>. at 501. Instead, the duty is limited to the repair and maintenance of the actual physical structure of the roadbed surface, paved or unpaved, designed for vehicular travel. <u>Id</u>. at 499 (citing <u>Scheurman v. Dep't. Of Transportation</u>, 434 Mich. 619 (1990)).

Moreover, the highway exception does not allow for tort liability for inadequate signage, obstructions, or other line of sight deficiencies. <u>Marchyok v City of Ann Arbor</u>, 260 Mich. App. 684 (2004), (Citing <u>Nawrocki v. Macomb County Road Com'n</u>, 463 Mich. 143, 183 (2000)); <u>see also Hanson</u>, 465 Mich. at 503-04.

### 3. Arguments

#### a. Maintenance and Repair of the Road

South Rockwood says that the Estate has failed to established that it did not properly maintain or repair the road leading up to the crossing. South Rockwood says that every witness who has been deposed has confirmed that they have had no difficulty navigating the road up to the crossing despite the level of the incline.[4] South Rockwood

---

[4] South Rockwood has not stated the names or testimony of the person(s) it is referring to.

also points out that O'Hara navigated the road for 3 years without incident, and that the Estate's accident reconstruction expert, Donald Holmes (Holmes) testified during his deposition that O'Hara's truck did not make skid or yaw marks on the road, which suggests that he did not have difficulty navigating the road before the accident.

The Estate responds that there is evidence that the road was not adequately maintained or repaired. The Estate says that photographs show that the road is "replete with cracks and indentations." The Estate points out that Arthur Wenzel (Wenzel), the Supervisor of the Department of Public Works for South Rockwood, testified at deposition that the road between North Dixie Highway and the crossing is a "bad section" because "it's concrete and there's holes in it" and South Rockwood constantly has to perform patch work on it. Wenzel also says that for the 30 years he has worked for South Rockwood, there have been unrepaired "gouge marks" in the road due to low bed trucks going up and over the railroad tracks. Holmes similarly characterized the surface of the road as "heavily scarred." The Estate also proffers the affidavit of Dr. Stephen Richards (Dr. Richards), a Ph. D. in Civil Engineering and the Executive Director of the Transportation Center at the University of Tennessee which conducts research projects in areas that include accident investigation, highway design, and traffic operations. Dr. Richards opines that the road was not properly maintained, leading to an "extraordinary rough roadway surface" which "would tend to divert and adversely compete for the attention of motorists navigating South Huron River Drive at the grade crossing."

### b. Elevation of the Road

South Rockwood's motion is also predicated on the assumption that the Estate's

position is that the road was defectively designed, and its claim is barred by Hanson. In particular, South Rockwood says that the Estate is arguing, in essence, that the elevation (i.e. the grade/incline) of the road is attributable to its original design.

South Rockwood says the Estate relies on Holmes' deposition testimony to show that the road is defective. Holmes says that because of the steep grade of the road, South Rockwood should consider moving, modifying, or closing the road. South Rockwood interprets this statement to mean that Holmes concludes that the overall construction or design of the elevation of the road is so flawed as to render it inherently dangerous.

The Estate responds that it has established a case under the highway exception because it is asserting that the elevation of the road makes it unsafe for vehicular travel, and that the elevation was caused by the negligent maintenance and repair, which over the years has added to the road's elevation. The Estate proffers the affidavit of Dr. Richards, and a second highway expert, Charles Van Deusen (Van Deusen), P.E., who both concluded that the paving and maintenance performed by South Rockwood of the road approaching the crossing caused the elevation of the road to increase over time. Van Deusen says the grade of the road was caused by a maintenance operation to widen the lanes and transform the road's surface from gravel to asphalt.

Finally, to support its argument that the road was not safe for vehicular travel, the Estate points to the deposition testimony of South Rockwoods' Engineer, John Hennessey (Hennessey), who opined that the elevation of the road leading up to the

9

crossing is outside of any industry design standards.[5]

### c. Line of Sight Deficiencies

South Rockwood also says that  Marchyok v, City of Ann Arbor, 360 Mich. App. 684, (2004) establishes that the highway exception does not allow tort liability against a municipality for inadequate signage, obstructions, or other line of sight deficiencies. Therefore, the Estate's claim that there were line of sight deficiencies is barred.

The Estate responds that the line of sight deficiency, in particular, the ability to see the railway flashers, was caused by the severe incline of the road, and therefore fall under the highway exception.[6]  The Estate relies on the Delozier, who testified at her deposition that the steepness of the road makes it difficult for motorists to see the railroad flashers.  Likewise, the Estate points out that Van Deusen concluded that the crossing does not meet MDOT's or the American Association of State Highway and Transportation Officials (AASHTO) standards because the road is not level enough to ensure an adequate view of the crossing.

### 4. Resolution

#### a.

South Rockwood has a statutory duty to maintain the road in a manner that is safe for vehicular travel.  M.C.L. § 691.1402(1).  The Estate asserts that South Rockwood has breached that duty because of its negligent maintenance and repair of the road.  In particular, the Estate says that the road and crossing are unsafe for

---

[5] Holmes testified that the grade of the road is at 12 percent grade.  It is unclear what the industry's standard is.

[6] Besides the railway flashers, the Estate does not specifically discuss any other line of sight deficiencies or obstructions at the crossing.

vehicular travel because (1) cracks and holes in the road divert the attention of the drivers from the crossing; (2) the severe incline/elevation of the road makes vehicular travel dangerous; and (3) the severe incline/elevation of the road has created a line of sight deficiency to the railroad flashers at the crossing. The Estate asserts that these conditions were the proximate cause of O'Hara's death.

Summary judgment is inappropriate here because there is sufficient evidence to create a factual dispute regarding whether the condition of the road made it unsafe for vehicular travel. There is also a genuine factual dispute over whether the elevation of the road made it unsafe for vehicular travel, and whether the elevation was caused by South Rockwood's negligent maintenance and repair. Finally, there is a genuine factual dispute as to whether the steepness of the road created a line of sight deficiency making it difficult for motorists to see the railroad flashers.

**b.**

This case is distinguishable from Hanson. In Hanson, the plaintiff's decedent was involved in a head on collision between two cars occurring at the crest of a hill when one or both cars crossed the center line. 465 Mich. at 494. The plaintiff claimed that the slope at the crest of the hill prevented the drivers from seeing each other in time to avoid a collision. Id. The Michigan Supreme Court explained that "the essence of plaintiff's claim against the road commission was that the section of highway in question was unsafe because of the limited sight distance caused by the curvature of the hill." Id. The same court held that this claim did not fall within the highway exception because the limited sight distance was not a road condition. Id. at 500. "Rather it is a design feature that is the product of the terrain through which the road traverses." Id. The

same court said that "the highway exception is only implicate upon [the defendant's] failure to repair or maintain the actual physical structure of the roadbed surface, paved or unpaved, designed for vehicular travel, which in turn proximately causes injury or damage."  Id. at 499 (citing Scheurman v. Dep't of Trans., 434 Mich. 619 (1990)).  In Hanson, there was no dispute that the actual roadbed surface was well maintained.  Id.

Here, the Estate's case is different because the Estate says that the conditions of the road which it asserts proximately caused O'Hara's death– in particular the rough road surface and elevation-- were caused by negligent maintenance and repair.  This claim falls squarely within the highway exception.  Likewise, the Estate argues that the elevation of the road caused the railway flashers to be difficult for motorists to see.  Insofar as the Estate is claiming that the alleged line of sight deficiency was caused by the elevation of the road, which in turn was caused by South Rockwood's negligent maintenance and repair of the road, the highway exception applies.

### B.  Whether the Condition of the Road was Open and Obvious

#### 1. Standard

An allegedly dangerous condition is considered open and obvious if it is reasonable to expect a person of ordinary intelligence to discover the danger and the risk presented upon causal inspection.  Novotney v. Burger King Corp., 198 Mich. App. 470, 475 (1993).  This is an objective test focusing on whether a reasonable person in plaintiff's position would foresee the danger, not on whether a particular plaintiff should have foreseen the danger.  Mann v. Shusteric Enterprises, Inc., 470 Mich 320 239

(2004).

## 2. Arguments

### a.

South Rockwood says that the condition and elevation of the road was open and obvious because it was readily apparent to the average person of ordinary intelligence. Further, South Rockwood says that the condition and elevation of the road was apparent to O'Hara in particular because Kari Smith (the mother of O'Hara's girlfriend) says that on the night he died, O'Hara was traveling his usual route home from her house. South Rockwood says "that [O'Hara] failed to appreciate the purported "danger" of the road (the incline), had no bearing on the fact that the allegedly defective condition, the roadway itself, was open and obvious to [him]."

### b.

The Estate first argues that the open and obvious defense does not apply where liability is premised on a statutory duty to maintain and repair a highway. See Haas v. Iona, 214 Mich. App. 361 (1995).

Second, the Estate says that there is a genuine issue of material fact relating to O'Hara's knowledge of the nature of the elevation of the road. The Estate says that although O'Hara was familiar with the intersection and crossing, he would not usually travel through the crossing using the route he traveled on the night of the accident. O'Hara father, Donald O'Hara, explained that since O'Hara's girlfriend lived on South Huron River Drive, O'Hara would normally travel westbound on South Huron River Drive and stay on it to travel up to and over the crossing. However, on the night in question, there were traffic detours in the area that prevented him from traveling his normal route

up to and over the crossing.  The detours required Thomas to travel northbound on North Dixie Highway to reach the intersection of North Dixie Highway and South Huron River Drive, and then make a left turn onto westbound South Huron Drive to approach the crossing.  The Estate says that O'Hara was not familiar with making a left turn onto South Huron River Drive, and approaching the crossing from this angle.  The Estate asserts that this approach is the most dangerous path for a motorist to take over the crossing because the motorist must proceed up a steep incline for approximately 66 feet up and over the crossing, and the railroad flashers are not facing motorists proceeding northbound on North Dixie Highway.  The railroad flashers would not be facing the motorist until the motorist completes the left turn onto westbound South Huron River Drive.

Finally, the Estate argues that even if the condition and elevation of the road was open and obvious, its claim should not be precluded because the defect had special aspects upon which a jury might find that the elevation caused a condition that was unreasonably dangerous despite obviousness.  Lugo v. Ameritech, 464 Mich. 512 (2001).  In Lugo, the Michigan Supreme Court held that a wet floor in front of the only means of exist from a building is unreasonably dangerous despite its obviousness.  The Estate says that this case is similar to Lugo because O'Hara was "forced" to drive the particular route he took due to detours in the area.  Therefore, the location of the defect presents a special aspect that a jury should consider.

### 3. Resolution

In Haas, 214 Mich. App. at 361, the Michigan Court of Appeals held that "the openness and obviousness of [a] danger does not absolve a municipality of its

14

statutory obligation to repair its sidewalks and highways. See VanStrien v. Grand Rapids, 200 Mich.App. 56, 58, 504 N.W.2d 13 (1993). However, the city may argue that the openness and obviousness of the danger establishes comparative negligence on plaintiff's part."

Summary judgment on the open and obvious defense is inappropriate here because the Estate has offered sufficient evidence to create a genuine issue of fact as to whether a reasonable person in O'Hara's position would have found the elevation of the road to be apparent.  One of the factors the jury would have to consider is O'Hara familiarity with the road because it appears he was not familiar with the particular angle at which he approached the crossing.  Whether the elevation of the road from O'Hara's particular route on the night of the accident would have been apparent to a reasonable person is for the jury to decide.

### V.  CONCLUSION

For the reasons discussed above, South Rockwood's Motion for Summary Judgment is DENIED.

**SO ORDERED.**

Date: February 8, 2007                     s/Avern Cohn
                                           AVERN COHN
                                           UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, February 8, 2007, by electronic and/or ordinary mail.

                                            s/Julie Owens
                                           Case Manager, (313) 234-5160